## TRINITY & B. V. RY. CO. v. SMITH.

(Court of Civil Appeals of Texas. Dallas. March 15, 1913. Rehearing Denied April 5, 1913.)

1. CARRIERS (§ 320*)—PERSONAL INJURIES——IMPURE DRINKING WATER—QUESTION FOR JURY—EVIDENCE.

In an action by a passenger alleging personal injuries to have been caused by water in defendant's station, the questions whether the water was poisonous and poisoned plaintiff *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

2. CARRIERS (§ 327*) — DRINKING WATER — CONTRIBUTORY NEGLIGENCE.

A passenger awaiting a train has the right to assume that water in a cooler in a station is good to drink, in the absence of something to put him on notice that it is not.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1363–1366; Dec. Dig. § 327.*]

3. CARRIERS (§ 347*) — DRINKING WATER — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—EVIDENCE.

In an action by a passenger for personal injuries caused by drinking poisonous water in a station, the question of plaintiff's contributory negligence in not noticing the strong odor of the water *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

4. APPEAL AND ERROR (§ 882*)—INVITED ERROR—ADMISSIONS.

Where a party requested a special charge on a certain issue, thereby, in effect, asserting that the testimony was sufficient to take it to the jury, he cannot be heard on appeal to say that the evidence was insufficient to justify the submission of the issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

5. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

Where plaintiff, poisoned by drinking water furnished by defendant, could retain nothing on his stomach for several days, nor retain his urine for two or three weeks, during which he had a fever, and at the time of the trial his back hurt him, his ankles were swollen, and his kidneys were permanently weakened, a verdict of $500 was not excessive, and did not show passion or prejudice on the part of the jury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

Action by W. H. Smith against the Trinity & Brazos Valley Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Morrow & Morrow, of Hillsboro, for appellant. J. E. Clarke, of Hillsboro, for appellee.

RASBURY, J. Appellee sued appellant in the trial court for damages for personal injuries and recovered verdict and judgment, from which appellant has appealed.

Appellee alleged that while in the negro compartment of appellant's passenger station at Hillsboro, awaiting the arrival of one of appellant's passenger trains, upon which he intended to become a passenger for Hubbard, and for which purpose he had purchased a ticket, he was injured by drinking foul and poisonous water. He claims that just before the train arrived he went to the water cooler in the station and drew some of the water and drank it, and was immediately nauseated and caused to vomit, and continued to do so for several days, and which subsequently caused him serious bodily and organic ailments and great suffering. It was also alleged that the liquid appellee drank

smelled badly, was discolored, foul, and poisonous, and that he drank same before discovering that fact.

Appellant pleaded the general denial, and specially that the alleged condition of the water was not because of any negligence of appellant, but the result of the willful act of the appellee or some third persons, and that appellee contributed to his own negligence in failing to discover the foul condition of the water before drinking it.

[1] The first assignment of error asserts it was error for the trial court to submit to the jury whether the water in the cooler was poisonous, whether it poisoned appellee, and whether appellant was negligent in permitting the water to remain in the cooler, for the reason that there was no evidence adduced showing the water was poisonous, or that appellee was poisoned by drinking same, and that hence an issue was submitted to the jury not raised by the evidence.

The appellee testified that he was at appellant's station with a companion, for the purpose of boarding appellant's cars to Hubbard, when he heard the train whistle, whereupon he jumped up to get a drink of water, telling his companion to secure tickets; that he drew a cup of water from the cooler and being in a hurry swallowed nearly all of it before detecting its bad taste; that he turned to meet his companion and started to give him money for the tickets, when the water made him sick "that quick" that he was compelled to jerk his hand away to avoid vomiting upon it; that he was never so sick in his life; that he thought he would "throw up" his "socks"; that he remained that sick until the train left, when he went to a colored doctor's office, who treated him, and that while there he suffered intensely and vomited all over the office; that for two or three days subsequent his stomach "was as sore as it could be," and he could retain nothing in his stomach and was subject to vomiting spells; that he had hurting in the back, and that now at times he awakes and cannot turn over on account of pains in his back; that his doctor has treated him for kidney trouble and washed out his bladder two or three times; that four or five days subsequent to drinking the water his bladder was so affected that he was unable to retain his urine, and he was compelled to use a cloth about his person; this condition lasted possibly two or three weeks, during which time he had fever; that he has suffered every night since drinking the water, sometimes cannot turn over in his bed, and when he arises of mornings his ankles are swollen, and he is weak; that he looked into the cooler after drinking the water and found the cooler about two-thirds full, and of reddish color.

Dr. E. W. Bates, appellee's physician, testified that when he arrived at his office appellee was lying on a cot with his hands on his stomach gagging, with perspiration passing from his forehead, and claimed there was a burning sensation in his stomach; that from the history given him by appellee he concluded appellee has acute cystitis, or inflammation of the bladder, and from what he found under the microscope concluded appellee had a disturbance of the functions of the kidneys, and that, in his opinion, such condition was caused by some irritant poison; that appellee told him about drinking the water at the depot and how it affected him, and that from his examination of appellee and from his analysis of appellee's urine it is his opinion that appellee's trouble was caused by irritant poison received in that water; that water can become poisoned by becoming stale and standing in a zinc or tin vessel; that from his examination and treatment of appellee he believes that his kidneys will always be affected from the attack and more susceptible to disease.

B. D. Hooks, city marshal for Hillsboro, testified that he examined the water at the time appellee drank it, and that it smelled like urine, and that the odor could be detected a foot from one's nose.

J. Y. McDaniel, constable, testified that he examined the contents of the cooler at the same time that Hooks did; that he raised the top from the cooler and bent over and smelled it; that the contents were of a reddish color and smelled strongly like urine, and smelled very unpleasant.

W. T. Hoppess, local agent for the appellant, testified that he made an examination of the contents of the cooler from which appellee drank, and that he could at that time detect the odor of urine; that it smelled pretty bad, but that later, when the contents were emptied, and while he stood about two feet distant from the cooler, he could detect no odor, nor observe any unusual color to the water; that the cooler was an ordinary tin or zinc cooler.

Wade Johnson, a clerk in appellant's office, testified that he smelled the contents of the cooler, and odor was that of urine.

Robert Dooley, porter of appellant, testified, in substance, as to the condition of the water, that that in the cooler, when he emptied it, appeared clear and pure, but that the odor from the cup smelled like urine.

Dr. Mahaffey, appellant's medical witness, examined appellee three or four days after the occurrence and found the conditions about as described by appellee's colored doctor, and made practically no change in the treatment, other than to direct that appellee's bladder should be washed thoroughly, which was done by Dr. Bates, at the suggestion of Dr. Mahaffey. He also testified, in substance, that appellee's condition could only be traceable to drinking the water by process of elimination and the having of nothing else upon which to base the opinion; that the conditions could have been caused from several derangements.

As we have said, the claim is made that

there is no testimony from which the jury could have determined that the water drank by appellee was poisonous. It is true that there appears to have been no chemical analysis of the water, resulting, no doubt, from the fact that it was emptied from the cooler shortly after the occurrence—a perfectly natural thing to do under the circumstances. It is in evidence, however, that water permitted to become stale in a tin or zinc vessel will in time become poisoned, and it is further in evidence that the cooler containing the water drank by appellee was an ordinary tin or zinc cooler. We think no conclusion can be reached other than that the water was exceedingly foul, and the only remaining question under this assignment is: Was it necessary to eliminate every other possible medical theory that might have produced the injury, before permitting the jury to draw the inference, under the facts, that it did result from the foul water? It seems to us to do so would be to establish a rule too narrow and circumscribed. The appellee is shown by the evidence to have been in good health prior to swallowing the liquid. The nausea resulted almost instantly upon drinking the water, and the other conditions which we have described followed. Appellee's doctor thinks his urine, perhaps, indicates diabetes, but Dr. Mahaffey does not go that far, and neither state that sudden nausea, as in this case, is attributable to diabetic conditions. So that on the whole case it occurs to us that, in view of the absence of any other proven or suggested cause, and considering the circumstance that appellee was under the care of Dr. Mahaffey, a witness for appellant, the evidence was sufficient to take to the jury for their determination whether the water which appellee drank was of a poisonous nature, and the jury having so found we will not substitute our opinion for theirs.

[2-4] The second assignment of error asserts that appellee was guilty of contributory negligence, in that he should have, in the exercise of ordinary care, discovered the condition of the water before drinking it. The appellee testified, in connection with the issue raised by this assignment, that when the whistle on the train blew he jumped up and told his companion to buy the necessary tickets, drew a cup of water from the cooler, and hurriedly drank it before detecting its condition. The court, in its general charge, instructed the jury that if the appellee, by the exercise of ordinary care could have discovered the condition of the water before drinking same, even though it was poisoned, to find for appellant. At the request of appellant the court further instructed the jury that if the water in the cooler was foul, or had urine in it, and was in such a condition that it had a strong odor, and that, had appellee used such care as an ordinari-

ly prudent person would have used, he would have discovered the bad odor before drinking the liquid, to find for the defendant. Appellee had the right to assume that the water in the cooler was safe to drink, in the absence of any proved fact or circumstance putting him upon notice of its actual condition, and such facts, coupled with the facts surrounding the manner and time of his drinking it, if they raised the issue of contributory negligence at all, were correctly submitted to the jury, so far as appellant is concerned. Besides, the appellant, from its standpoint, asserted that there was sufficient testimony to take the case to the jury, when it requested the special charge on that issue, by which it sought to group the facts on which it relied as constituting contributory negligence on the part of the appellee, and cannot for that reason be heard to assert at this time a contrary claim.

[5] The final question in the case, raised by appellant's third and fourth assignments of error, is that the verdict of the jury is excessive. A careful examination of the testimony of the appellee and his physician, as well as the testimony of Dr. Mahaffey, leads us to the conclusion that the verdict in this case is not one that warrants the exercise of the narrow and limited option we possess to disturb the findings of juries on questions of fact. The verdict was for $500, and there seems to be no fact in the record that indicates either passion or prejudice on the part of the jury.

Finding no reversible error in the record, the judgment is affirmed.